## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 16-078** |
| **MIGUEL GUTIERREZ** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its undersigned attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Amanda R. Reinitz, Special Assistant United States Attorney, respectfully submits this sentencing memorandum regarding defendant Miguel Gutierrez, who is scheduled to be sentenced on August 11, 2016.

On April 29, 2016, the defendant pled guilty to an information charging him with three counts of wire fraud, in violation of 18 U.S.C. § 1343, arising from his scheme to defraud the Social Security Administration ("SSA") by using his employee access to SSA's computer systems to redirect benefit payments intended for third-party beneficiaries into his personal bank account. The defendant's actions resulted in a total loss to the government of approximately $7,122.86. The defendant is a man who abused his position of trust as a Social Security employee to obtain easy money for his own personal use, to the detriment of the beneficiaries from whom he stole, as well as the taxpayers who fund the programs he stole from. For these reasons, as well as for the reasons provided below, the government recommends an incarceration sentence at the high end of the guideline range of 8 to 14 months.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

1

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the Section 3553(a) factors, which support a sentence at the high-end of the guidelines in this case.

## I.    BACKGROUND

On December 10, 2015, defendant Gutierrez was arrested pursuant to a complaint and

warrant authorized by the Honorable Lynne Sitarski.  On March 4, 2016, defendant Gutierrez

was charged by information with three counts of wire fraud, in violation of 18 U.S.C. § 1343,

pursuant to a plea agreement between the parties.  On April 29, 2016, the defendant appeared

before this Court and pled guilty to the information.  In the plea agreement and during the plea

colloquy, defendant Gutierrez admitted that he had unlawfully schemed to defraud the SSA by

using his employee access to SSA's computer systems to steal government funds not intended

for him.

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Penalties.

For Counts 1-3 (wire fraud, per count): 20 years' imprisonment, a 3 year period of

supervised release, a $250,000 fine, full restitution of $6,166.66, and a $100 special assessment.

Total Maximum Sentence: 60 years' imprisonment; 3 years of supervised release; a

$750,000 fine, a $300 special assessment and restitution of $6,166.66.

The defendant has agreed to make full restitution of $7,122.86.[1]

### B.    Sentencing Guidelines Calculation.

In the Presentence Report (PSR), the Probation Office concluded that the defendant's

advisory guideline range is 8 to 14 months imprisonment (PSR ¶ 74), and the parties agree with

this conclusion.  The Probation Office reached this conclusion as follows.  Under U.S.S.G. §

2B1.1, the base offense level for this offense is 7 (PSR ¶ 21).  Two points are added to the base

---

[1] Although charged with only three counts of wire fraud totaling $6,166.66, the defendant
received a total of $7,122.86 in Social Security funds, and as part of his written plea agreement,
agreed to repay the entirety of the money he received.

3

offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(B), because the loss exceeded $6,500 but was less than $15,000 (PSR ¶ 22). Two points are added to the base offense level pursuant to U.S.S.G. § 3A1.1(b)(1) because the defendant knew, or should have known, that the victim of at least one of the charges was a vulnerable victim (PSR ¶ 23). Two more points are added pursuant to U.S.S.G. § 3B1.3 because the defendant abused a position of public trust in committing his crimes (PSR ¶ 24). Two points are deducted pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility (PSR ¶¶ 28). Accordingly, the defendant's final adjusted offense level is 11 (PSR ¶ 29). The defendant has no prior convictions, and thus his criminal history category is I (PSR ¶¶ 30-34). Offense level 11 and criminal history category I yield an advisory guideline range of 8-14 months; thus the defendant faces an advisory sentencing guideline range of 8 to 14 months in prison (PSR ¶ 74).

A full review of all pertinent factors supports the conclusion that a within-guidelines sentence of 14 months incarceration is the most appropriate sentence in this case.

## III.  ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one at the high-end of the advisory guideline range of 8 to 14 months.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in

4

original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### 1.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first factor under § 3553 is the nature and circumstances of the offense and the history and characteristics of the defendant. The seriousness of the offense committed by defendant Gutierrez cannot be overstated. The defendant is a man who was trusted with access to computer systems which contain the financial, personal, and medical information of tens of millions of American taxpayers. For this important job, he was paid approximately $65,000 a year (PSR ¶ 62). Social Security employees are initially trained, and then reminded at least annually, of the importance of safeguarding the information to which they have access, as well as

how unauthorized access is strictly prohibited. Despite this knowledge, and despite his respectable salary, the defendant decided to abuse his position, and steal from the taxpayers of America. His decision to do so would have been appalling enough if he had stopped merely with his decision to turn back "on" the benefits of an individual believed to be dead, and redirect those benefits to his own bank account. But he did not stop there. The defendant also decided to steal from a minor child, by redirecting a back payment of benefits – intended for the care of this minor child – into his own bank account.

Moreover, when committing these crimes, the defendant did not simply use his computer access to facilitate these disgraceful acts, but tried to cover his tracks by implicating other employees at his place of employment. Each SSA employee is assigned a specific "PIN" which is used, together with a password set by the employee, to access SSA's computer system. Each employee's actions on the computer system can be traced via their PIN, something every SSA employee is made aware of from the moment they begin their employment. SSA records reflect that not only was the defendant's PIN used to facilitate changes on certain records, but the PINs of not one, but two other employees were also utilized.

When interviewed, these employees were found to have no knowledge of Gutierrez's criminal activity. One of the employees was relatively new to SSA – and Gutierrez had been assigned as his mentor prior to the defendant's arrest in this case. That employee advised investigators that the defendant provided training to him, frequently by instructing him how to perform various tasks by walking him through transactions on the employee's computer. Thus, while the employee did not specifically recall the victim for which his PIN was registered as making a change on the record, he did recall Gutierrez "teaching" him how to perform the one-time payment action which is at issue for one of the beneficiaries in this case.

6

The second employee did not recall the transaction for which his PIN appears, but stated that he does occasionally walk away from his work station without locking it, and that it would be possible for another individual, such as Gutierrez, to access his station during that time frame. In using the access of two other individuals in addition to his own, the defendant knowingly implicated other individuals in his crimes, in what can only be seen as an attempt to avoid detection by SSA's internal controls. Thus, this is not a defendant who ran into money troubles and "panicked" by stealing from SSA. This is a defendant with a consistent work history, in a well-paying job, who meticulously thought out not only how he would steal, but how he could avoid detection in so doing.

The government further notes that the loss in this case is likely limited to such a relatively small number not because the defendant admitted his crimes – but because the internal controls instituted by SSA on its computer systems worked, and the defendant was flagged for further review. If these controls had not worked, it is impossible to know how long the defendant would have continued stealing money from the American taxpayers, while continuing to collect a salary from those same taxpayers whom he had a responsibility to serve and protect.

With respect to the characteristics of the defendant, he is 42 years of age, and reports pinched nerves in his back and knees, which he claims impair his ability to work (PSR ¶ 51). However, his allegations are suspicious at best, as the defendant had no problem working throughout his adult life – until he was arrested in the instant case (PSR ¶¶ 62-64). Now, with a felony conviction relating to stealing from his last employer, the defendant seems to have suddenly become disabled – to the tune of now obtaining $2,332.71 a month in "disability" income from the VA to replace his employment check (PSR ¶ 61). The defendant also reports seeking mental health treatment for approximately seven years, and that his mental conditions

7

are managed with medication – treatment that can continue if incarcerated (PSR ¶¶ 53-55).

Accordingly, there is nothing in the defendant's physical or mental history that could not be

treated and controlled by the Bureau of Prisons, and thus the defendant does not have an

impairment severe enough to warrant a variance from the sentencing guidelines.

      Thus, an examination of this factor weighs heavily in favor of a top-of-the-guidelines

sentence.

     **2.**     **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

      The sentence imposed must reflect the seriousness of defendant Gutierrez's offense. The

programs administered by the SSA have suffered significant episodes of fraud, and the costs to

these funds cannot, and should not, be ignored. By committing this fraud, the defendant stole

money from the American taxpayers who fund these programs. Moreover, in committing this

fraud, the defendant abused the position of trust he held as a government employee. He was

entrusted to safeguard the information of millions of Americans – and instead of having respect

for that responsibility, he misused it for his own personal gain.

      As the Regional Commissioner of Social Security sets forth in his letter to the Court,

attached as Exhibit A, the fundamental concept of integrity for government employees is set

forth in the first sentence of the regulation covering the "basic" obligations of working for the

federal government, by stating that "*Public Service is a public trust*. Each employee has a

responsibility to the United States Government and its citizens to place loyalty to the

Constitution, laws and ethical principles above private gain." 5 C.F.R. § 2635.101(a). This

defendant showed nothing but contempt for these basic principles when he chose his private gain

over the responsibility entrusted to him by the American people.  Such shameful acts deserve a sentence of 14 months incarceration.

### 3.   The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

Deterrence, both specific and general, is a particularly important consideration in this case.  As set forth above, this defendant went to great lengths to not only commit this crime – but did so without regard for the victims he stole from, and the co-workers he tried to implicate in his crime.  To reward such actions with a probationary sentence would show the defendant that his reward outweighed the risk of his criminal conduct.  Moreover, it is important that the taxpayers that the defendant stole from – and who paid his salary for many years prior – know that the Court takes the responsibilities of government employees very seriously, and will punish those who act with the callous disregard that the defendant showed in this case.

The defendant's crimes come at a time where the government is facing increasing scrutiny of its programs and its employees.  In this case, the Social Security Administration did what the public trusted it would do – it built internal controls that worked, and caught the defendant relatively early in his criminal activity.  But SSA cannot alone show the public how serious this crime is – the Court should also impose a sentence which acts as a deterrent to the defendant and any others who contemplate attempting to steal from SSA.  A top-of-the-guidelines sentence would protect the public by deterring others from engaging in the lies, deceit, and fraud conducted by defendant Gutierrez.

9

    **4.**    **The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

There is no need in this case to adjust the sentence in order to provide educational or vocational training. The defendant is a college graduate who was consistently employed until he stole from his last employer (PSR ¶¶ 58, 62-64). As stated above, the defendant's physical and mental conditions can be managed by the Bureau of Prisons if a sentence of incarceration is imposed. Thus, this sentencing factor provides no reason to vary downward in this case.

    **5.**    **The Guidelines and Policy Statements Issued by the Sentencing Commission**

The Sentencing Guidelines stand as another essential consideration in this case. The government's recommendation of a within-guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" id. at 108-09 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

Thus, the Supreme Court stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

Significantly, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.  The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines."  The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*"  Booker, 543 U.S. at 264-65 (emphasis added).  The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines.  Id. at 263.  We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'"  *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

*United States v. Ricks*, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original).  Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

6.      **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

A guidelines sentence of 14 months is particularly necessary when considering the importance of avoiding unwarranted sentencing disparities, another factor that is set forth in Section 3553(a).

11

This Section 3553(a) factor is not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. *See United States v. Parker*, 462 F.3d 273 (3d Cir. 2006); *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) ("Although it is true that § 3553(a)(6) requires a sentencing judge to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,'" that "factor 'concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between codefendants.'").

### 7.     The Need to Provide Restitution to Any Victims of the Offense

The government also requests that this Court consider the impact of these crimes upon the victim in this case, the Social Security Administration, an agency of the United States, and the beneficiaries from whom the defendant stole, one of whom was a minor child.  The defendant has agreed to provide full restitution.  The Social Security Administration was able to recover some of the money left in the defendant's account at the time of his arrest.  An outstanding amount of $5,134.61 remains, including the $300 special assessment, and the government would request that the Court order $4,834.61 to be paid by the defendant to the Social Security Administration as follows:

> Social Security Administration
> Debt Management Section
> Attn: Court Refund
> P.O. Box 2861
> Philadelphia, PA 19122

The government also includes, as stated above, the letter of the Social Security Administration's Regional Commissioner regarding the defendant's crimes for consideration by this Court in fashioning an appropriate sentence.

## IV.    CONCLUSION

For all of the above-listed reasons, the government respectfully recommends that the Court impose a sentence of 14 months incarceration and order the payment of outstanding restitution.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

MARY E. CRAWLEY
Assistant United States Attorney
Chief, Government Fraud Section

AMANDA R. REINITZ
Special Assistant United States Attorney

Dated: August 3, 2016

13

## CERTIFICATE OF SERVICE

I certify that on this day I caused a true and correct copy of the Government's Sentencing

Memorandum to be served by electronic court filing and first class mail on the below counsel for

the defendant:

Matthew Sedacca, Esq.
Law Offices of Marc Neff
1818 Market Street
13th Floor
Philadelphia, PA 19103
Matt@nefflawoffices.com


AMANDA R. REINITZ
Special Assistant United States Attorney



Dated: August 3, 2016

# EXHIBIT A



# SOCIAL SECURITY

Regional Office III
PO Box 8788
Philadelphia PA 19101

**JUL 2 1 2016**

Honorable Jeffrey L. Schmehl
United States District Court
The Madison Building
400 Washington Street, Suite 401
Reading, PA 19601

Re: United States v. Miguel Gutierrez, Criminal No. 16-078

Dear Judge Schmehl:

Integrity is a concept so fundamental to public service that it is literally placed in the first
sentence of the regulation covering the "basic" obligations of working for the federal
government:

> **(a)** *Public service is a public trust.* Each employee has a responsibility to the United
> States Government and its citizens to place loyalty to the Constitution, laws and ethical
> principles above private gain. (5 C.F.R. 2635.101(a))

It would be bad enough if the crime here were just one against property. The fraud in this case is
even more insidious. Mr. Gutierrez misused his position to alter Social Security records for
individuals, redirecting payments to his own bank account. Mr. Gutierrez's actions undercut the
country's faith in Social Security and federal government employees at a time when it can least
be afforded.

Social Security pays benefits to 63.2 million Americans monthly. In going about our daily
work, our employees have access to, and the sacred obligation to protect, the personal
information of all our citizens. Social Security is the tie that binds all of us, representing some of
our country's deepest held values. If you are elderly, widowed, or disabled, the current
generation of workers will help support you- just as you helped support prior generations.
Unlike other crimes, when you steal from Social Security, you do not just take from one of us,
you take from all of us.

Currently, Social Security takes in $62 billion less than it pays out yearly. When at one point,
there were 40 workers for every beneficiary, that ratio is down to 2.1 workers per beneficiary.
The fraud perpetrated by Mr. Gutierrez adversely affects the confidence of Congress in the
program, making a solution to this fiscal situation even more precarious. It also erodes the trust
our country has in its federal government employees to do the right thing and to go about their
tasks with integrity.

That is not all. The costs to the agency here were much greater than the money that Mr. Gutierrez stole. Social Security spent hundreds of hours of administrative time to investigate the fraud in this case. This outpouring of employee hours comes when we can least manage it. We are in a time of shrinking budgets and long waiting times for our beneficiaries. Every hour spent investigating and rooting out fraud is time that we cannot spend on directly serving the American people and eliminating our backlogs.

Thank you for allowing me the opportunity to address the court. A crime against Social Security is not victimless, but rather a crime against all of us. It is my hope that your sentence of the defendant reflects the seriousness of this offense.

Terry M. Stradtman
Regional Commissioner, Philadelphia